**REVERE COPPER AND BRASS INCORPORATED, Plaintiff-Appellant,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, Defendant and Third-Party Plaintiff,**

v.

**GEORGE A. FULLER COMPANY, Inc., Third-Party Defendant-Appellee.**

**No. 28413.**

United States Court of Appeals, Fifth Circuit.

May 8, 1970.

Lee & Lee, Joseph A. Lee, Scottsboro, Ala., Raymond L. Falls, Jr., Cahill, Gordon, Sonnett, Reindel & Ohl, Floyd Abrams, New York City, for appellant.

L. Tennent Lee, III, Huntsville, Ala., for appellee.

Before SIMPSON, MORGAN and INGRAHAM, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

This is an interlocutory appeal brought pursuant to Title 28, U.S.C. § 1292(b), from an order of the District Court for the Northern District of Alabama denying a motion by Revere Copper and Brass Incorporated (hereafter Revere) the original plaintiff in the case below, to dismiss for want of jurisdiction a "counterclaim" under Rule 14(a), Federal Rules of Civil Procedure, brought against it by the George A. Fuller Company, Inc. (hereafter Fuller) a third-party defendant. The single issue presented by this appeal is whether a claim by the third-party defendant against the original plaintiff under Rule 14(a), F.R.C.P.[1] must be supported by an independent ground of federal jurisdiction or whether it comes within the ancillary jurisdiction of the federal courts. We affirm.

This action arises out of two construction contracts entered into by Fuller and The Industrial Development Board of the City of Scottsboro, Alabama (hereafter the Industrial Development Board) whereby Fuller agreed to furnish certain materials, equipment and services in connection with the construction of a manufacturing plant to be leased to and operated by Revere for the purpose of producing aluminum and other metal products. The contract recognized that the Industrial Development Board had appointed Revere its agent for all purposes under the contract, except the payment and receipt of money, and that all obligations of Fuller arising under the contracts for the performance of the work would run to and be enforceable by Revere to the same extent and in the same manner as the obligations were enforceable by the Industrial Development Board. Fuller and The Aetna Casualty and Surety Company (hereafter Aetna) executed performance bonds in excess of $14,000,000 obligating Fuller and Aetna to pay to Revere and the Industrial Development Board all costs and damages sustained as a result of Fuller's failure to well and truly perform its obligations under the construction contracts.

Revere brought the original action against Aetna on the surety bond in federal court, alleging in its complaint that Fuller had breached express and implied warranties and specific contract provisions, had been negligent and had made false representations by failing to "furnish efficient business administration and superintendence with respect to its work and [by failing to] maintain a competent staff at all times at the job site, thus requiring the maintenance of certain salaried employees and the incurring of other expenses" by Revere and for failing "to complete its work within the prescribed time". Revere seeks to recover $2,045,000.[2]

1. Rule 14(a) provides in part:
   The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the

   plaintiff's claim against the third-party plaintiff.

2. The Industrial Development Board also commenced an action against Fuller in

In its answer, Aetna denied the operative allegations in Revere's complaint and by separate complaint impleaded Fuller as a third-party defendant under Rule 14(a), F.R.C.P., alleging that Fuller had agreed to indemnify Aetna for all losses sustained as a result of Aetna's suretyship on the performance bonds.

Fuller admitted the allegations of the third-party complaint, but denied the operative allegations in Revere's complaint and "counterclaimed" against Revere under Rule 14(a) alleging that Revere had breached certain express and implied warranties, had been negligent and guilty of wanton and willful misconduct, and had made certain misrepresentations concerning the administration of the construction contracts resulting in the failure to complete the construction on time and that Revere has been unjustly enriched by its performance and seeks to recover $1,328,880.

Revere moved to dismiss Fuller's Rule 14(a) counterclaim on the ground that there was no diversity of citizenship between Revere and Fuller, both being incorporated in the State of Maryland, and that an independent ground of federal jurisdiction is required to support a Rule 14(a) counterclaim. The District Court held Fuller's counterclaim to be within the ancillary jurisdiction of the federal courts and overruled Revere's motion.

Although the question of whether a Rule 14(a) counterclaim must be supported by an independent ground of federal jurisdiction has never been raised on the appellate level, there are six reported district court decisions dealing with the question [3] and the problem has been discussed in the treatises and current legal literature.[4] These authorities, however, are divided.

The first case to hold that an independent ground of jurisdiction is necessary before a third-party defendant may assert a claim against the original plaintiff was Morris, Wheeler & Co. v. Rust Engineering Co., supra. n. 3. This case, which was decided prior to the 1946 amendment to Rule 14 allowing the third-party defendant to assert a claim directly against the original plaintiff, held that such a claim was not cognizable as a Rule 13 counterclaim because the plaintiff had not asserted a claim against the third-party defendant and thus the plaintiff and the third-party defendant were not "opposing parties" as required by Rule 13. The court went on to say, in what seems to be dicta, that the third-party's claim was independent of the main claim and thus required an independent ground of federal

the Northern District of Alabama (C.A. 69–277) seeking $438,050 and other declaratory relief. Revere brought an action against Fuller in the Circuit Court, Jackson County, Alabama, (Case No. 1086) apparently making allegations identical to those made here, and seeking $2,045,000 and other declaratory relief.

3. Union Bank & Trust Co. v. St. Paul Fire and Marine Ins. Co., D.Nebr., 1965, 38 F.R.D. 486; Heintz & Co. v. Provident Tradesmens Bank and Trust Co., E.D. Pa., 1962, 30 F.R.D. 171; James King & Son, Inc., v. Indemnity Insurance Company, S.D.N.Y., 1959, 178 F.Supp. 146; Shverha v. Maryland Cas. Co., E.D.Pa., 1953, 110 F.Supp. 173; Bernstein v. N. V. Nederlandsche-Amerikaansche, etc., S.D.N.Y., 1949, 9 F.R.D. 557; Morris Wheeler & Co. v. Rust Engineering Co., D.Del., 1945, 4 F.R.D. 307 (dicta).

4. E. g., 1A W. Barron & A. Holtzoff, Federal Practice and Procedure (Wright rev., 1960) § 424 and 1968 Supp., p. 133; 3 J. Moore, Federal Practice, ¶ 14.27 [2] (1968); C. Wright, Handbook of the Law of the Federal Courts, § 76 (2nd ed., 1970); Fraser, "Ancillary Jurisdiction and the Joinder of Claims in Federal Courts", 33 F.R.D. 27 (1964); Holtzoff, "Entry of Additional Parties in a Civil Action", 31 F.R.D. 101 (1963); Note, "Diversity Requirements in Multi-party Litigation", 58 Columb.L.Rev. 548 (1958); Note, "The Ancillary Concept and the Federal Rules", 64 Harv.L.Rev. 968 (1951).

3

jurisdiction. In Shverha v. Maryland Casualty Co., supra, n. 3, the court followed the lead of Professor Moore [5] and concluded that the third-party defendant must have an independent ground of federal jurisdiction to assert a Rule 14(a) counterclaim against the original plaintiff since the original plaintiff must have an independent ground of federal jurisdiction to assert a direct claim against the third-party defendant. James King & Sons, Inc. v. Indemnity Insurance Company, supra, n. 3, follows *Shverha* and also relies on Rule 82, F.R. C.P., which provides that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts * * *".

The first case to hold a Rule 14(a) counterclaim within the ancillary jurisdiction of the federal courts was Bernstein v. N. V. Nederlandsche-Amerikaansche, etc., supra, n. 3, which based its holding on the fact that the claim was one "arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff". Similarly, Heintz & Co. v. Provident Tradesmens Bank and Trust Co., supra, n. 3, held that since a Rule 14(a) counterclaim must

arise out of the same transaction or occurrence which gives rise to the main claim, it is within the ancillary jurisdiction of the court, stating:

It is a tenet of long settled antiquity that once a federal court has validly acquired jurisdiction, its jurisdiction extends to all matters "ancillary" to the main cause of action, even though the ancillary matters lack federal jurisdictional requisites. (Citing Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), and Lesnik v. Public Industrials Corporation, 2 Cir., 1944, 144 F.2d 968, 973–974.) 30 F.R.D. at 173.

Further, the court noted that compulsory counterclaims under Rule 13(a), crossclaims under Rule 13(g), and claims by intervention of right under Rule 24(b) are ancillary since they meet the "same transaction and occurrence" test and that it could "see no sound reason to depart from the traditionally accepted standard of 'ancillary' in respect to claims under Rule 14". 30 F.R.D. at 173–174. The most recent decision on the question, Union Bank & Trust Co. v. St. Paul Fire & Marine Ins. Co., supra, n. 3, relied on *Heintz* and *Bernstein*, as

5. 3 Moore, supra, n. 4, at 724–726 states:
The cases are in disagreement on the requirement of independent jurisdictional grounds to support the third-party defendant's claim against the plaintiff. Since it is analogous to a compulsory counterclaim under Rule 13(a), the claim might be considered ancillary to the main action. However the overwhelming weight of authority, which requires independent jurisdiction for a claim asserted by the plaintiff against the third party, militates against a contrary rule when the third party takes the initiative to exercise a corresponding right in claiming against the plaintiff. Admittedly, there is, in such instances, little chance of a collusive attempt to circumvent diversity limitations; only by the most remote coincidence could a third party find a friendly defendant to implead him, ostensibly on a claim of recovery over, but in reality for the purpose of allowing the third party to assert a claim against the

plaintiff. In addition, it may be argued that the plaintiff, by bringing his action has submitted to all claims arising out of the "transaction or occurrence" that is the subject matter of his claim against the defendant. Similar contentions could be made, however, in favor of allowing the plaintiff to claim against the third party regardless of the presence of independent grounds of jurisdiction: first, the court may always exercise its discretionary powers to deny impleader when the third-party complaint shows no genuine grounds for recovery over; secondly, the very purpose of Rule 14 is to settle related matters in one action if it can be done without extending federal jurisdiction. As a result, a rule that independent grounds of jurisdiction need not exist in cases where the third party seeks to assert a claim against the plaintiff would require a reversal of existing authority in the converse situation. (Footnotes omitted.)

well as Fraser, "Ancillary Jurisdiction and the Joinder of Claims in Federal Courts", supra, n. 4, 33 F.R.D. at 41, and Holtzoff, "Entry of Additional Parties in a Civil Action", supra, n. 4, 31 F.R.D. at 110 in holding that a Rule 14(a) counterclaim is ancillary. The court in *Union Bank* seemed to be particularly impressed with the thought that "[i]f a defendant's claim against a third-party may be factually unrelated to the main claim and still be within the court's ancillary jurisdiction, then certainly a third-party defendant's claim against the plaintiff, which necessarily is closely related to the main claim, should also be cognizable". 38 F.R.D. at 489.

The theoretical basis which underlies the modern doctrine of ancillary jurisdiction appears to be fairly well settled. In holding that a defendant's claim impleading a third party within the ancillary jurisdiction of the court, the Second Circuit, in Dery v. Wyer, 1959, 265 F.2d 804, 807, said:

> To understand the basic theory of Rule 14 it is necessary to remember that in the Federal Rules of Civil Procedure the word "claim" has a somewhat broader connotation than that which prior to the Rules pertained to a "cause of action." It is used to denote the aggregate of operative facts which give rise to a right enforceable in the courts." Original Ballet Russe v. Ballet Theatre, 2 Cir., 133 F.2d 187, 189. As this court noted in Clark v. Taylor, 2 Cir., 163 F.2d 940, 942:

"The theory adopted in the new rules * * * has been that the 'transaction' or 'occurrence' is the subject matter of a claim, rather than the legal rights arising therefrom; additions to or subtractions from the central core of fact do not change this substantial identity * * *." American Fidelity & Casualty Co. v. Owensboro Milling Co., 6 Cir., 222 F. 2d 109; 2 Moore's Federal Practice, page 359 et seq. The same aggregate or core of facts may give rise not only to rights in the plaintiff against the defendant but also to rights in the fendant against third parties. * * * It is the theory of the Rule that the defendant's right against the third party is merely the outgrowth of the same aggregate or core of facts which is determinative of the plaintiff's claim. In this view, the court which has jurisdiction over the aggregate of facts which constitutes the plaintiff's claim needs no additional ground of jurisdiction to determine the third-party claim which compromises the same core of facts. It is, we think, in this sense that the court is said to have ancillary jurisdiction over the third-party claim.

*See also* 1A Barron & Holtzoff, supra, n. 4, § 424; Wright, supra, n. 4, § 76.

The exact criteria to be used to detect the presence of ancillary jurisdiction, however, is more elusive. The leading case on the modern doctrine of ancillarity [6] is Moore v. New York Cot-

---

6. The concept of ancillary jurisdiction is not a recent invention, but has been a part of our law for at least a century, or more. Generally, claims to property already subject to the jurisdiction of a federal court; bills in equity to protect and effectuate the judgments and decrees of federal courts; as well as proceedings adjunctive to the principal suit, such as the appointment of ancillary receivers, were considered within the ancillary jurisdiction of the federal courts. E. g. Freeman v. Howe, 24 How. 450, 65 U.S. 450, 16 L.Ed. 749 (1861); Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct.

338, 65 L.Ed. 673 (1921); Mitchell v. Maurer, 293 U.S. 237, 55 S.Ct. 162, 79 L. Ed. 338, 339 (1934). The Supreme Court set down what it termed the "general rule" in Fulton National Bank of Atlanta v. Hozier, 267 U.S. 276, 280, 45 S.Ct. 261, 69 L.Ed. 609 (1925), "that when a Federal court has properly acquired jurisdiction over a cause it may entertain, by intervention, dependent or ancillary controversies; but no controversy can be regarded as dependent or ancillary unless it has a direct relation to property or assets actually or constructively drawn into the court's possession or control by

ton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), which held that a compulsory counterclaim under old Equity Rule 30 need not be supported by an independent basis of federal jurisdiction, but was ancillary to the main cause of action since it arose out of the transaction which was the subject matter of the original suit. In defining what it meant by the word "transaction", the Court said:

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their *logical relationship*.

> \* \* \* \* \* \*

> So close is the connection between the case sought to be stated in the bill and that set up in the counterclaim, that it only needs the failure of the former to establish the foundation for the latter; but the relief afforded by the dismissal of the bill is not complete without an injunction restraining appellant from continuing to obtain by stealthy appropriation what the court had held it could not have by judicial compulsion. 270 U.S. at 610, 46 S.Ct. at 371 (Emphasis added.)

The "logical relationship" test established in *Moore* was further elaborated on in Great Lakes Rubber Corporation v. Herbert Cooper Co., 3 Cir., 1961, 286 F.2d 631, 633–634, where the court said:

> \* \* \* the issue of the existence of ancillary jurisdiction and the issue as to whether a counterclaim is compulsory are to be answered by the same test. \* \* \* The tests are the same because Rule 13(a) and the doctrine of ancillary jurisdiction are designed to abolish the same evil, viz., piecemeal litigation in the federal courts.

> We have indicated that a counterclaim is compulsory if it bears a "logical relationship" to an opposing party's claim. (Citing cases.) The phrase

"logical relationship" is given meaning by the purpose of the rule which it was designed to implement. Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. \* \* \*

■ It would be fair to say, therefore, that a claim is ancillary when it bears a logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction. However, the type of relationship contemplated by the phrase "logical relationship" remains somewhat clouded. Perhaps the simplest way to determine the type of the nexus that must necessarily exist between the main claim and another claim for the other claim to be considered ancillary is to examine the present extent of the application of the doctrine to the various devices of the Federal Rules allowing joinder of claims.

■ While it is well established that a compulsory counterclaim under Rule 13(a) is within the ancillary jurisdiction since it necessarily arises out of the same transaction or occurrence as the original claim, Moore v. New York Cotton Exchange, supra, a permissive counterclaim under Rule 13(b) requires an independent ground of federal jurisdiction since it does not arise out of the same transaction or occurrence as the original claim, Camper & Nicholsons, Ltd. v. Yacht "Fontainebleau II" S.D. Fla., 1968, 292 F.Supp. 734, except

the principal suit", but many early decisions seem to go beyond this limited concept of ancillarity. *See generally,*

Wright, supra, n. 4, § 9; Note, "The Ancillary Concept and the Federal Rules", supra, n. 4 at 969–972.

where a setoff is involved. Fraser v. Astra Steamship Corp., S.D.N.Y., 1955, 18 F.R.D. 240; see 3 Moore, supra, n. 4, ¶ 13.19. *Contra*, Robinson Bros. & Co. v. Tygart Steel Products Co., W.D.Pa., 1949, 9 F.R.D. 468.[7] Crossclaims under Rule 13(g) are considered ancillary since, under the Rule, they must arise "out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action." Childress v. Cook, 5 Cir., 1957, 245 F.2d 798. An impleader action under Rule 14(a) is considered ancillary even though such an action does not, as a general rule, directly involve the aggregate of operative facts upon which the original claim is based, but arises out of that claim in the sense that the impleader action, such as the action for indemnity here brought by Aetna against Fuller, would not exist without the threat of liability arising out of the original claim. Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir. 1953, 201 F.2d 408; Lesnik v. Public Industrials Corp., 2 Cir., 1944, 144 F.2d 968. Likewise, intervention as of right under Rule 24(a), available "when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties," is regarded as ancillary to the original claim and need not be supported by an independent ground of federal jurisdiction. Formulabs, Incorporated v. Hartley Pen Company, 9 Cir., 1963, 318 F.2d 485, 492, cert. den. 375 U.S. 945, 84 S.Ct. 352, 11 L.Ed.2d 275.

From the application of the doctrine of ancillary jurisdiction to these joinder devices, it appears that a claim has a logical relationship to the original claim if it *arises* out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.

Before proceeding, another aspect of the *Moore* decision, supra, must be mentioned, and that is the Court's concern with the need to provide complete relief to the counterclaiming defendant. 270 U.S. at 610, 46 S.Ct. 367, 70 L.Ed. 750. A cursory review of the joinder situations to which ancillary jurisdiction is applied reveals that, generally, it is made available to litigants in a defensive posture, who would otherwise be prevented or greatly burdened in adequately protecting their interests. There is much to be said for allowing parties who are involuntarily brought into federal court to defend against a claim, or who must be allowed to intervene in a federal action as a defendant to secure their interests, to assert all their claims arising out of the controversy in one proceeding and that this is, or ought to be, one of the factors to be considered in determining the existence of ancillary jurisdiction. *See*, Note, "Diversity Requirements in Multiparty Litigation," supra, n. 4, at 561.

It is easily seen that Fuller's claim arises out of the aggregate of operative facts which forms the basis of Revere's claim in such a way to put their logical relationship beyond doubt. The two claims are but two sides of the same

**7.** The treatment of permissive counterclaims involving set-offs is an exception to the logical relationship test in that they are independent from the original claim and can be said to be ancillary only in the sense that they are limited by the amount of the original claim. The ancillary status given set-offs is best explained historically from their source in English statute, 2 Geo. 2, c. 22, § 13 (1729). *See*, Note "Diversity Requirements In Multiparty Litigation", supra, n. 4, at 553–555.

coin. The construction was not completed before the time provided in the two contracts. If Revere is not responsible for the delay, as Fuller alleges, Fuller must at least be guilty of breach of contract, not to mention the other allegations of fault in Revere's complaint. To paraphrase the Supreme Court in Moore v. New York Cotton Exchange, supra: so close is the connection between the case sought to be stated in Revere's complaint and that set up in Fuller's Rule 14(a) counterclaim that it only needs the failure of the former to establish the foundation for the latter.

Not only is the parallel between a Rule 14(a) counterclaim and a compulsory counterclaim under Rule 13(a) so close as to be persuasive on the question of ancillarity, the parallel between the instant case and cases dealing with the ability of an intervenor of right under Rule 24(a) to counterclaim against the original plaintiff without an independent basis of federal jurisdiction removes any substantial doubt. It is well established that a contractor who has agreed to indemnify his surety on a performance bond can intervene as a party defendant as of right in a suit on the performance bond against the surety and then assert his counterclaim against the plaintiff, even in the absence of an independent ground of federal jurisdiction. United States, to Use and Benefit of Foster Wheeler Corp. v. American Surety Co., 2 Cir., 1944, 142 F.2d 726; Coleman Capital Corp. v. Fidelity & Deposit Co. of Md., S.D.N.Y., 1967, 43 F.R.D. 407. It would be anomalous to hold that Fuller could have asserted its counterclaim against Revere free of any jurisdictional impediment if it had taken the initiative of intervening, and yet hold that since Fuller was brought into this action involuntarily as a third-party defendant, its counterclaim must satisfy the requirements of strict diversity and thus fail.

█ Echoing Professor Moore,[8] Revere argues that since there must be an independent ground of jurisdiction to support the original plaintiff's claim against a third-party defendant, the same requirement must be met by the third-party defendant in asserting a counterclaim against the original plaintiff. Suffice it to say that the two situations are the converse of each other only superficially and that there are differences which militate against identical treatment. First of all, the plaintiff has the option of selecting the forum where he believes he can most effectively assert his claims, he has not been involuntarily brought to a forum, faced with the prospect of defending himself as best he can under the rules that forum provides, or defending himself not at all. Since a plaintiff could not initially join a non-diverse defendant, it is arguable he should not be allowed to do so indirectly by way of a fortuitous impleader. Moreover, there is the possibility, whether real or fanciful, of collusion between the plaintiff and an overly cooperative defendant impleading just the right third party. Whatever the merit or demerit of these reasons, they point to a sufficient difference to require that the application of ancillary jurisdiction to each type of claim must be decided separately. Consequently, this decision is to be strictly limited to the precise question decided.[9]

Revere also argues that the recognition of ancillary jurisdiction in the present situation would be an unwarranted extension of federal diversity ju-

8. *See*, 3 Moore, supra, n. 4, ¶ 14.27[1] and [2].

9. Needless to say, the vast weight of authority requires that there must be an independent ground of federal jurisdiction to support a claim by the original plaintiff against a third-party defendant under Rule 14(a). *See* 3 Moore, supra, n. 4, ¶ 14.27[1] and cases cited therein. *But* see, Buresch v. American LaFrance, W.D.Pa., 1968, 290 F.Supp. 265; Olson v. United States, D.Nebr., 1966, 38 F.R.D. 489; Kelly v. Oklahoma Natural Gas Co., W.D.Okla., 1948, 11 F.R.Serv. 14a.62, Case 8. Rule criticized in Fraser, "Ancillary Jurisdiction and the Joinder of Claims in the Federal Courts", supra, n. 4, 33 F.R.D. at 42–43.

risdiction in contravention of Rule 82, F.R.C.P.,[10] and the general trend to restrict this head or jurisdiction. See, ALI, Study of the Division of Jurisdiction between State and Federal Courts (Proposed Final Draft No. 1, 1965); Field, "Proposals on Federal Diversity Jurisdiction", 17 S.Car.L.R. 685 (1965). In answer to this argument, it should be noted that the Federal Rules do not expand ancillary jurisdiction, but provide opportunities for involving the doctrine, which, as has been seen, was already well established when the rules became effective, in additional situations. Lesnik v. Public Industrials Corporation, supra, 144 F.2d at 973–974; Childress v. Cook, supra, at 245 F.2d 803; Fraser, "Ancillary Jurisdiction and the Joinder of Claims in the Federal Courts", supra, n. 4, at 28 of 33 F.R.D.

The order of the District Court overruling Revere's motion to dismiss Fuller's Rule 14(a) counterclaim is affirmed and this case is remanded for further proceedings.

Affirmed and remanded.

---

10. Rule 82, F.R.C.P., provides:

These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein. An admiralty or maritime claim within the meaning of Rule 9(h) shall not be treated as a civil action for the purposes of Title 28, U.S.C. §§ 1391–93.